EDWARD M. WERNER
Assistant Federal Defender
Federal Defenders of Montana
Billings Branch Office
175 North 27th Street, Suite 401
Billings, MT 59101
Phone: (406) 259-2459
Fax: (406) 259-2569
edward_werner@fd.org
      Attorney for Defendant

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>ADOLFO VARGAS LEPE,<br><br>Defendant | Case No. CR-23-79-BLG-SPW<br><br>**BRIEF IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE** |

COMES NOW Defendant, Adolfo Vargas Lepe, by and through his attorney of record, Edward M. Werner, and the Federal Defenders of Montana, and hereby files this brief in support of his motion to suppress evidence.

1

**Summary of Argument**

First, Adolfo moves to suppress suspected controlled substances and all other objects seized from within a storage unit in Carbon County, Montana on July 10, 2023. The unreasonable length of delay between law enforcement's initial seizure of the storage unit on May 31, 2023 and the acquisition of a search warrant on July 7, 2023 – approximately 38 days – justifies suppression under the Fourth Amendment.

Second, Adolfo moves to suppress the warrantless search of a backpack by law enforcement on July 10, 2023 and the resulting seizure of suspected controlled substances from within the backpack. Officers did find the backpack on the side of an unpaved road in Carbon County approximately 41 days after they surmised that Adolfo left it there during a vehicle pursuit by a sheriff's deputy. However the government's agents necessarily believed that Adolfo had a possessory interest in the backpack based upon Adolfo's recorded jail phone calls in early June 2023 that led them to the location in the first place. Thus it was not reasonable for law enforcement to assume that the backpack was abandoned property for which Adolfo had no Fourth Amendment interest. Absent a search warrant, the search of the backpack was not justified under the Fourth Amendment.

///

///

**Anticipated Facts**

On May 31, 2023 deputies observed Adolfo driving a truck into and then out from the Toy Box Storage premises in Boyd, Montana. Earlier that day the Carbon County district court had issued a $250,000 arrest warrant. On May 29, 2023 L.H. reported to law enforcement while at a Billings hospital that Lepe had taken her against her will from Lander, Wyoming and later assaulted her at his residence near Roberts, Montana. The Carbon County warrant resulted. Deputies arrested Adolfo after a vehicle pursuit which included high speed travel on unpaved roads near US Highway 212.

Later that day Carbon County Sherrif's Deputy Croft contacted the owner of the Toy Box Storage, who confirmed Adolfo rented a unit there. The owner was asked to meet with the deputy at the business' premises so the deputy could secure the unit for a possible search warrant, and the owner agreed.[1]

There may be a factual issue between the government and the defense over whether Adolfo was current on his payments for the unit. Regardless, the existing lock affixed to the unit was cut off and a new lock was placed on the unit, which was located at Building 6, Unit 26. *See* Exhibit 1, USAO 1750. Croft retained the key

---

[1] An employee of the Toy Box recounted to an FBI agent on July 6, 2023 that Deputy Croft told the owner on May 31, 2023 that he would be back later that night or the next morning with a search warrant after putting a different lock on the unit. The employee recounted that Croft and the owner were down at Lepe's unit for fifteen minutes. Exhibit 1, USAO 3204.

3

for the locked unit. The deputy placed tape on the edges of the storage unit's sliding door at more than one location, initialed and dated the tape, and photographed the outside of the unit.

On July 7, 2023 government agents applied for and received a search warrant for the storage unit from the United States Magistrate Court in Billings. The search warrant detailed investigative steps taken after Adolfo's arrest on May 31, 2023. *See* Exhibit 1, USAO 1750-1764. These actions included listening to Adolfo's jail phone calls between June 2 to June 15, 2023 that contained suspected drug conversations. On July 10, 2023 agents searched inside the unit. Within it they seized suspected cocaine and methamphetamine, a brown duffel bag, a black nylon bag, and a baggie containing two small vials of suspected marijuana.

After the search of the storage unit was completed, government agents elected to check the area of the May 31 vehicle pursuit with Lepe "for the backpack Lepe described throwing out" while on the jail phone calls referenced in the July 7 search warrant. Exhibit 1, report of Deputy Mahoney, USAO 7964. Specifically, "[b]ased on the information of a canal referenced by Lepe in the calls we determined we would start our search in the area of 495 Carbonado road and work our way east." *Id.* Deputy Mahoney located a backpack in a dry ditch area on the side of the road, under a bush. He recounted in his report that the tall grass around it did not appear

to be disturbed by anyone walking down to the backpack. The backpack was removed from this location. *See* Exhibit 1, USAO 7964.

Then the agents opened the backpack and removed its contents. Inside the agents found thirteen packages wrapped in several layers of clear plastic with brown colored packing tape in the middle. Three more packages were wrapped all the way with what appeared to be red electrical tape.

The suspected controlled substances from both searches were later tested, resulting in purported amounts of 458.3 grams of cocaine (+/- 0.2 grams), 810.4 grams of pure methamphetamine hydrochloride (+/- 50.2 grams), 5575.1 grams of pure methamphetamine hydrochloride (+/- 345.8 grams), and 1056.8 grams of fentanyl (+/- 0.2 grams). It appears the larger quantity of methamphetamine and the fentanyl originated from the search of the backpack.

In the second superseding indictment filed in January 2024 the government has alleged five counts against Adolfo (Doc. 44):

> Counts 1-3 – Kidnapping, punishable by up to life imprisonment in counts 1 and 3 and twenty years to life in count 2;
>
> Count 4 – Possession with intent to distribute controlled substances, punishable by a mandatory minimum of ten years and up to life due to the alleged quantities of methamphetamine and fentanyl and up to twenty years based on the cocaine allegation;

> Count 5 – Possession of a firearm in furtherance of a drug trafficking offense, punishable by a mandatory minimum of five years to life imprisonment, consecutive to any other sentence.

Adolfo entered not guilty pleas to these counts on January 25, 2024. (Doc. 45). He now moves to suppress the cited drug evidence which the government intends to introduce at trial.

### I. The delayed and prolonged seizure of the storage unit violated the Fourth Amendment's requirement that seizures must be reasonable

The Fourth Amendment protects against unreasonable searches and seizures by the government. U.S. Const. amend. IV; *Elkins v. United States*, 364 U.S. 206, 213 (1960). "[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable searches.'" *United States v. Jacobsen*, 466 U.S. 109, 124 (1984), citing *United States v. Place*, 462 U.S. 696, 707-710 (1983).

The Ninth Circuit has observed that "[a]n unreasonable delay between the seizure of a package and obtaining a search warrant may violate the defendant's Fourth Amendment rights." *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015). A lesser standard should not be required for the seizure of a storage unit.

6

"The reasonableness of any particular government activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *United States v. Hernandez*, 313 F.3d 1206, 1213 (9th Cir. 2002). The Ninth Circuit further noted in *Hernandez* that it "must determine whether the delay was "reasonable" under the totality of the circumstances, not whether the Government pursued the least intrusive course of action." *Id.*

In *United States v. Dass*, 849 F.2d 414 (9th Cir. 1988), the Ninth Circuit held that law enforcement acted unreasonably under the Fourth Amendment due to their prolonged seizure of packages. Agents had collected suspicious packages at post offices, conducted canine sniffs for the presence of marijuana, and detained the packages for 7 to 23 days before securing search warrants. *Id.* Citing *United States v. Van Leeuwen*, 397 U.S. 249, 253 (1970), the circuit court noted that merely "short delays in obtaining a search warrant for mailed packages" are reasonable. *Id.*, at 415. The Court rejected the government's argument that it did not benefit from the delay. *Id.* Nor did the Court accept the government's contention that the initial probable cause from the dog sniff meant that the constitutionality of the seizure as it continued for a prolonged amount of time. *Id.*, 415-416. The Court concluded:

> Such a contention undercuts two goals of the fourth amendment – deterring unreasonable police behavior, *Steagold, v. United States*, 451 U.S. 204, 205 [ ] (1981)(the fourth amendment is designed to prevent, not simply redress, unlawful police action), and judicial determination of probable cause. *Id.*, at 212. The government's theory would allow an unlimited period of seizure without judicial intervention; to accept

7

its argument would nullify the seizure portion of the search and seizure clause of the fourth amendment. This we will not do.

*Id.*, at 416. The Court was unmoved by the dissent's focus on the high volume of packages and the "flood of warrants" law enforcement was seeking for suspicious packages. *Id.*, at 416-418.

Similarly, in *United States v. Mitchell*, 565 F.3d 1347, 1351-1352 (11th Cir. 2009), the Eleventh Circuit determined that a 21-day delay in securing a search warrant for a seized computer was unreasonable under the Fourth Amendment.

The Ninth Circuit analyzed the Eleventh Circuit's reasoning from *Mitchell* in *United States v. Sullivan*, 797 F.3d 623, 635 (9th Cir. 2015), where a 21-day delay in obtaining a search warrant for a computer was upheld. The Court cited the fact that the defendant was incarcerated, but it also heavily weighed the defendant's parole status and his diminished expectation of privacy as a parolee. *Id.*, at 634-635. Sullivan also gave officers express consent to search his laptop and even urged the officers to review evidence on the laptop. *Id.*, at 634. Moreover, the parole officers who initially seized the laptop did not have the capability to perform a forensic search before transferring it to other law enforcement, who then obtained Sullivan's consent and also sought a search warrant. *Id.*

The United States District Court in Oregon also recently observed:

> There is no bright line test to determine when a delay becomes unreasonable, and courts must balance the government's interest in the seizure against the defendant's possessory interest in the property

> seized. *Sullivan*, 797 F.3d at 633. Courts consider factors such as whether the defendant consented, the extent of the intrusion into the defendant's possessory interest, the Government's legitimate interest in holding the property as evidence, and the length of delay. *Id.* Additional considerations include "whether the police diligently pursue[d] their investigation," *United States v. Laist*, 702 F.3d 608, 614 (11th Cir. 2012) (internal quotation marks and citation omitted), and the defendant's incarceration, parole, or probation status, *Sullivan*, 797 F.3d at 633.

*United States v. Hunt*, 2022 WL 1153985, *4 (D. Oregon 2022).

Here, the circumstances were not complex. There must be a reasonable limit to the amount of time that the government seizes property before it obtains a search warrant. And a 38-day delay sets an unreasonable precedent.

Adolfo was not on parole. And while an individual's incarceration at the hands of the state may impact one's ability to use property, the person's underlying right to the property has not been surrendered. Incarcerated defendants awaiting trial, along with their families, frequently make efforts to retain properties while incarcerated so they have some semblance of a life when they leave custody.

Perhaps more importantly, and as the Ninth Circuit highlighted in *Dass*, the exclusionary rule deters unreasonable searches. In sum, suppression is appropriate under the Fourth Amendment.

///

///

///

## II. The warrantless search of the backpack was not conducted pursuant to a search warrant exception

The backpack located near Carbonado Road was not searched with the approval of a judicial search warrant. Nor did the search occur under a search warrant exception. It is anticipated the government may contend that the backpack was abandoned property, and that no Fourth Amendment concern is raised.

"Because warrantless searches or seizures of abandoned property do not violate the [F]ourth amendment … persons who voluntarily abandon property lack standing to complain of its search or seizure." *United States v. Nordling*, 804 F.2d 1466, 1479 (9th Cir. 1986) (cleaned up) (citing *United States v. Jackson*, 544 F.2d 407, 409 (9th Cir. 1976).

However, abandonment "is primarily a question of intent, and intent may be inferred from words, actions, and other objective facts. Abandonment here is not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of search." *Jackson*, at 409, citing *United States v. Colbert*, 474 F.2d 174, 176; *Katz v. United States*, 389 U.S. 347 (1967). *See also United States v. Cella*, 568 F.2d 1266, 1283 (9th Cir. 1977).

"Abandonment is a factual determination that "is a question of intent."" *United States v. Fisher*, 56 F.4th 673, 686 (9th Cir. 2022), quoting *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986). "This determination is to be made

in light of the totality of the circumstances, and two important factors are denial of ownership and physical relinquishment of the property." *Nordling*, at 1469.

On the one hand it may be contended that actual possession of the backpack was relinquished, and thus it was abandoned for Fourth Amendment purposes. Yet unique to this case is the fact the government relied upon Adolfo's early June 2023 jail phone calls and these calls took place before the search of the backpack. Certainly the agents looking for the backpack believed Adolfo had an intent to retain control over it. This is displayed in Deputy Mahoney's reference to Adolfo's phone calls when deciding where to search.

There are situations where defendants have physically relinquished control of property and then disavowed any interest in the property before the search. *See United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir. 1983) (defendant discarded a satchel and then denied having knowledge of the item); *Nordling*, at 804 F.2d at 1470 ("Nordling disclaimed ownership and left the bag on the airplane in circumstances in which it was virtually certain that the bag would be opened, inspected and turned over to law enforcement authorities before he could possibly attempt to reexert physical control").

There are defendants who relinquish control of property and the physical relinquishment is the only information possessed by government agents at the time of the search. In *United States v. Williams*, 569 F.2d 823, 824-825, 826 (9th Cir.

1978) the defendant being followed by narcotics agents unhitched the trailer connected to his truck at a rest stop and drove away. The agents conducted a warrantless search of the trailer and the defendant only returned after the search had occurred. *Id.*

In *United States v. Fisher*, 56 F.4th 673, 681, 687 (9th Cir. 2022) a defendant left an incriminating device in the attic of a home where he used to reside. Nine months elapsed between the sale of the home to a new owner and the eventual search by law enforcement. In finding suppression was not appropriate, the Ninth Circuit quoted its observation in *United States v. Sledge*, 650 F.2d 1075, 1080 (9th Cir. 1981) that "if one who has abandoned property from all outward appearances in fact has retained a subjective expectation of privacy, then a search of the property is nevertheless valid if that expectation is intrinsically unreasonable or not otherwise entitled to protection." *Id.*, at 687. *See also United States v. Ehrman*, 2023 WL 5607554 (9th Cir. 2023) (unpublished) (defendant dropped a backpack when a deputy shined his patrol car's spotlight on the defendant, who continued to walk away).

On the other hand, in *United States v. Burnette*, 698 F.2d 1038, 1047-1048 (9th Cir. 1983), the Ninth Circuit concluded that a defendant had not abandoned a purse when she referred to the purse as her own and attempted to retain her right to privacy to the contents of the purse when interacting with an officer.

12

This situation presents a niche case. Here there is a defendant who partially relinquishing physical control of property. But then the officers believed the defendant was expressing an intent to retain control of the property in the days that immediately followed. The Ninth Circuit has been clear that abandonment is a question of intent. When the backpack was seized the officers believed it belonged to Adolfo, based on the specific content of his calls. The appropriate step under the Fourth Amendment was to obtain a search warrant before the interior of the backpack was searched. Under the totality of the circumstances, the failure to do so violated the Fourth Amendment.

**Conclusion**

"The investigation of crime would always be simplified if warrants were unnecessary. But the Fourth Amendment reflects the view of those who wrote the Bill of Rights that the privacy of a person's home and property may not be totally sacrificed in the name of maximum simplicity in enforcement of the criminal law." *Mincey v. Arizona*, 437 U.S. 385, 393 (1978).

The exclusionary rule bars the admission of evidence seized in violation of the Fourth Amendment and evidentiary fruits of an illegal seizure. *See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963). Both of the identified searches violated the Fourth Amendment, and the resulting fruits should be suppressed.

RESPECTFULLY SUBMITTED this 13th day of March, 2024.

                                  /s/ Edward M. Werner
                                  EDWARD M. WERNER
                                  Federal Defenders of Montana
                                        Counsel for Defendant

## CERTIFICATE OF SERVICE
## L.R.5.2(b)

I hereby certify that on March 13, 2024, a copy of the foregoing document was served on the following persons by the following means:

<u>1, 2</u>   CM-EDF
<u>    </u>   Hand Delivery
<u> 3 </u>   Mail
<u>    </u>   Overnight Delivery Service
<u>    </u>   Fax
<u>    </u>   E-Mail

1. CLERK, UNITED STATES DISTRICT COURT

2. ZENO B. BAUCUS
   RYAN G. WELDON
   Assistant United States Attorney
   United States Attorney's Office
   2602 2nd Avenue North, Suite 3200
   Billings, MT  59101
       Counsel for the United States of America

3. ADOLFO VARGAS LEPE
       Defendant

        /s/ Edward M. Werner
        EDWARD M. WERNER
        Federal Defenders of Montana
            Counsel for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief is in compliance with Local Rule 12.1(e). The Brief's line spacing is double spaced. The brief is proportionately spaced, the body of the argument has a Times New Roman typeface, 14-point size and contains 2,910 words, excluding tables and certificates.

DATED this 13th day of March, 2024.

>/s/ Edward M. Werner
>EDWARD M. WERNER
>Federal Defenders of Montana
>      Counsel for Defendant