EDWARD M. WERNER
Assistant Federal Defender
Federal Defenders of Montana
Billings Branch Office
175 North 27th Street, Suite 401
Billings, MT 59101
Phone: (406) 259-2459
Fax: (406) 259-2569
edward_werner@fd.org
      Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>ADOLFO VARGAS LEPE,<br><br>Defendant | Case No. CR-23-79-BLG-SPW<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE** |

      COMES NOW Defendant, Adolfo Vargas Lepe, by and through his attorney of record, Edward M. Werner, and the Federal Defenders of Montana, and hereby files this reply brief in support of his motion to suppress. This filing addresses the government's response on the question of the seized storage unit.

1

**The prolonged seizure of the storage unit violated the Fourth Amendment, and suppression remains necessary**

The government's position heavily relies upon the purported failure to make payments on the storage unit. (Doc. 56 at 2, 4-5, 10-11). In doing so the government asks the Court to use hypothetical contract ideas to justify the unreasonable length of delay by law enforcement in acquiring a search warrant.

The fundamental problem with the government's argument is that law enforcement fully seized the storage unit on May 31, 2023.[1] The search warrant application for the unit stated the following:

> After Lepe's arrest, a CCSO deputy contacted the owner of Toy Box Storage and requested he check his records for a unit rented by Lepe. The owner stated that Lepe does rent a unit from him. The deputy asked the owner if he could meet at the storage unit so the deputy could secure it for a possible search warrant. The owner agreed and led the deputy to Building G, Unit 26. The deputy photographed the unit from the exterior. The owner then cut the lock off of the storage unit and replaced it with a new one. The deputy taped the edges of the storage unit with evidence tape, initialed and dated the tape, and photographed the unit again. As of the drafting date of this affidavit, there is no evidence that the unit has been opened since the day that a new lock was installed. Evidence tape is still in place on the unit door and the tape appears to be undamaged.

Defendant's Exhibit 1, USAO 1752-1753.

---

[1] As far as defense counsel can discern, the deputy who entered the Toy Box property on May 31, 2023, Deputy Croft, did not author a report detailing his interaction with the Toy Box owner.

Government agents did not relinquish control over the unit during the 38 days that passed until a search warrant was sought. The government does not argue against this point. A seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Karo*, 468 U.S. 705, 712 (1989).

Clearly the Toy Box owner acted at the request of law enforcement on May 31, 2023. When a private party acts as an "instrument or agent" of the state in effecting a search, Fourth Amendment interests are implicated. *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971). A new lock and evidence tape were not placed on the unit on May 31, 2023 because of payment issues, but rather the actions of law enforcement. The property manager for the Toy Box stated in a July 6, 2023 statement to the FBI that "[Deputy] CROFT currently has custody of the key." *See* Defendant's Exhibit 1, USAO 3205.

Further, that now former property manager for the Toy Box advised law enforcement in a recent phone interview that the Toy Box payment policies now relied upon by the government were not strongly enforced. (*See* USAO 8664: "However, BART reported that the policy was not strongly enforced.")[2] Thus the government's reliance upon a hypothetical description of contract law is flawed.

---

[2] This FBI interview of Bart recently took place on March 25, 2024. Bart reported quitting work at the Toy Box 5-6 months ago and moving to another state. The

The government's argument regarding the Toy Box's payment policy is undermined by its reference to *United States v. Gilman*, 684 F.2d 616, 619-20 (9th Cir. 1982). (Doc. 56 at 11). In *Gilman* the storage unit actually turned over contraband to law enforcement only after the lessee/defendant did not pay rent. *Gilman*, at 619-620. And this occurred after the storage unit provided the lessee notice that the objects in the unit would be considered abandoned if he did not take action. *Id.*

Nevertheless the government focuses on the description of the Toy Box's rental practices. Yet even under this view a lessee who is late on payments would not suffer the consequence of the Toy Box dispossessing the lessee of the property until 90 days had passed. The government is asking the Court to find that if the Toy Box had strictly imposed business practices preferred by the government – which apparently the Toy Box did not do – then the company *would have* put a lock on the unit on June 10, 2023. (Doc. 56 at 5).[3]

---

owner of the Toy Box referenced in the search warrant application is Michael Kananen.

[3] The government's arguments are at odds with how the Toy Box actually handled its business. In July 2023 Bart told the FBI the following: "LEPE would always pay his rent in cash, though he would rarely pay on time. At one point, LEPE was 5-6 months behind on his rent payments. When BART could not get ahold of LEPE, she would call TIANA (RIVERA), who paid LEPE's bill most of the time. There have been at least two instances when [L.H.] paid for the storage unit with her own card." *See* Defendant's Exhibit 1, USAO 3204.

This hypothetical theory does not excuse the unreasonable seizure in this case by the government's agents. Importantly, the government is not asserting that the 90-day payment deadline passed during the 38-day delay. Further a ledger from the Toy Box company shows payments were received for the unit on August 8, 2023. *See* Defendant's Exhibit 2, p. 6, account ledger from the Toy Box Boat & RV Storage, Inc. The Toy Box's account summary then shows a charge for the unit for the month of September 2023. *Id.* Thus the Toy Box was still charging for the unit and allowing it to be occupied through the summer of 2023.

The government effectively takes the possession that during a 38-day delay in obtaining a search warrant, an accused person must continue to pay money for the property already seized by law enforcement if one wishes to retain a remaining Fourth Amendment interest in the seized property. This is despite the fact that the prolonged seizure of the property has deprived the individual of the right to use the property through this time. However when the seizure becomes unreasonably long, as it did here, this situation morphs into an unreasonable seizure under the Fourth Amendment. Under the government's argument could not this practice then be extended to rental and mortgage payments for residences? It bears repeating that a 38-day delay in obtaining a search warrant sets an unreasonable and untenable precedent.

There is a self-fulfilling nature to the government's reliance upon the fact that Adolfo was in jail during the unreasonable seizure. Adolfo was incarcerated due to the same investigation and prosecution that involved the seizure of the storage unit. The government should not be incentivized to seek detention for defendants to achieve the added benefit of having more time to seize, investigate, and eventually search property.

Further, a law enforcement officer seized the unit through the changing of the lock and then placed evidence tape on it. And now the government argues that the delay was made reasonable because the defendant did not somehow attempt to physically access the unit in response. The government's position gives too little credence to the authority wielded by law enforcement in society. The out-of-circuit *Laist* case cited by the government noted the factor of whether or not the person *consented* to the seizure. 702 F.3d 608, 613-614 (11th Cir. 2012). Consent is an appropriate inquiry here, and consent did not occur.

The Eleventh Circuit in *Laist* also stated "[w]hen balancing these interests to determine the reasonableness of the government's actions, we are also obliged 'to take into account whether the police diligently pursue[d] their investigation.'" *Id.*, at 613, quoting *United States v. Place*, 462 U.S. 696, 709 (1983). The government argues that "competing demands from unrelated cases may be a reasonable cause for the prolonged retention of a piece of seized evidence." (Doc. 56 at 13, referencing

6

*United States v. Hernandez*, 313 F.3d 1206, 1214 (9th Cir. 2002). Unlike *Hernandez*, the government does not cite other investigations that prevented the request for a search warrant. And the contested delay in *Hernandez* was less than one day. *Id.* More than one law enforcement agency participated in the investigation of the current case. The government asserts that during the 38-day period agents listened to jail phone calls. The analysis would be different if this ongoing investigation into jail calls *preceded* the seizure of the storage unit.

  The government gives little attention to the length of the seizure in this case. In *Sandoval v. County of Sonoma*, 72 F. Supp. 3d 997, 1009-1011 (N.D. Cal. 2014), a civil case, a federal district court in the Ninth Circuit determined that a 30-day warrantless seizure of a vehicle violated the Fourth Amendment. This was found despite the plaintiff's weakened possessory interest, in that he was seemingly legally prohibited from driving. *Id.*, at 1010.

  The government cites a district court case involving the seizure of a phone. (Doc. 56 at 9), *see United States v. Ortiz*, 2024 WL 418622, *34-35 (C.D. Cal. Feb, 5 2024). Yet *Ortiz* involved merely a phone, which is meaningfully different from the ability to access a storage unit. Nor was it argued Ortiz had to pay for the phone to maintain a Fourth Amendment interest in the property.

  And Ortiz was incarcerated on multiple other cases other than the federal case during much of the delay in obtaining a search warrant. *Id.*, *6-9, 35. This was also

the case in *United States v. Sullivan*, 797 F.3d 623, 633-634 (9th Cir. 2015), who as noted in the defense's opening brief, had a significantly reduced privacy interest due to the conditions of his parole.  Sullivan also consented to the seizure of the laptop that was in question.  *Id.*

<u>The good faith exception does not apply</u>

The government avers that the good faith exception excuses any finding of an improper seizure.  (Doc. 56 at 14-15).  In making this argument the government focuses on the search warrant and the subsequent search, rather than the unconstitutional seizure.  However the Fourth Amendment violation occurred before the search warrant was obtained.  In a similar vein, the government cannot insulate an illegal warrantless search by including the product of that search in a warrant affidavit.  *United States v. Grandstaff*, 813 F.2d 1353, 1355 (9th Cir. 1987); *Allen v. City of Portland*, 73 F.3d 232, 236 (9th Cir. 1996).

The government does not provide meaningful support from the Ninth Circuit Court of Appeals for reliance on the good-faith exception.  In *United States v. Taylor*, 828 Fed. Appx. 491, 492 (9th Cir. 2020) (unpublished), the Ninth Circuit reversed a denial of a motion to suppress when a 14-month delay in obtaining a search warrant for a phone was deemed to be "unjustifiably long and constitutionally unreasonable."  In the unpublished *Taylor* opinion the Ninth Circuit did not engage in an apparent good-faith exception analysis.

That said, in *United States v. Song Ja Cha*, 597 F.3d 995, 1005 (9th Cir. 2010), and in the context of mistakes of law, the Ninth Circuit reaffirmed that "there is no good-faith exception to the exclusionary rule for police who do not act in accordance with governing law" (quoting *United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir. 2000)). "To create such an exception . . . would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law they are entrusted to enforce and obey." *Id.* (cleaned up).

*Cha* did recognize the holding in *Herring v. United States*, 555 U.S. 135, 144 (2009) that "to trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it … the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systematic negligence." This analysis is objective in nature and the court must consider "whether a reasonably trained officer would have known that the search was illegal." *United States v. Jobe*, 933 F.3d 1074, 1078 (9th Cir. 2019), quoting *United States v. Leon*, 468 U.S. 897, 922 (1984).

In *Jobe* a 21-day delay in obtaining a federal search warrant was upheld. However it was justified in large part because of the agent's reasonable reliance on an insufficient state search warrant that allowed for the initial seizure of the laptop. *Id.*, at 1077-1078, 1080. This reliance on the prior search warrant was deemed to be

9

reasonable. The Ninth Circuit observed in *Jobe* that "[t]he greater the distance between the actions of a reasonably well trained officer and the actions of an officer in a particular case, the more likely it is that exclusion is the proper remedy." *Id.*, 933 F.3d 1074, 1078-79. In *Cha* the Ninth Circuit observed that the "the police officers were a far stretch from *Leon*'s 'reasonably well trained officer.'" *Cha*, at 1005.

The government references the use of the good faith exception in a Second Circuit appellate case, *United States v. Smith*, 967 F.3d 198, 213 (2d Cir. 2020). In that case a 31-day delay was determined to have violated the Fourth Amendment. *Id.*, at 211-12. The appellate court described its concern about a month-long delay in applying for a search warrant becoming the "new normal." *Id.*, at 210. The Second Circuit did conclude the delay was an isolated act of negligence as opposed to an instance of deliberate, reckless, or grossly negligent disregard for the defendant's Fourth Amendment rights. *Id.*, at 211-12. Yet relevant to the current case, the "delay did not afford the police any strategic advantage in Smith's case." *Id.*, at 212. Here the government cites the investigation of Adolfo's jail phone calls in justifying the prolonged seizure of the storage unit.

The government also relies upon a district court order, *United States v. Johnson*, 2015 WL 4776096 (N.D. Cal. 2015). However Johnson's suppression argument regarding a delayed seizure was undermined by his parole conditions that

10

resulted in a diminished privacy interest.  *Id.*, *14-17.  The parole consideration similarly justified the good-faith exception.  *Id.*, *19.

In sum, the current case presents a circumstance where there were "sufficiently deliberate" state actions such that "exclusion can meaningfully deter." *United States v. Artis*, 919 F.3d 1123, 1133 (9th Cir. 2019).  This is opposed to a mistake that was the product of mere negligence.  *Id.*  "The government bears the burden of showing that the good-faith exception applies." *Artis*, 919 F.3d at 1134.  It has not done so here.

On May 31, 2023 it may have been intended to seek a search warrant within the next day.  Some unexpected but reasonable delay may have been acceptable and within the boundaries of the Fourth Amendment.  However it is respectfully submitted that the 38-day impasse veered off into the realm of the deliberate, reckless, or grossly negligent.

RESPECTFULLY SUBMITTED this 3rd day of April, 2024.

/s/ Edward M. Werner
EDWARD M. WERNER
Federal Defenders of Montana
Counsel for Defendant

11

# CERTIFICATE OF SERVICE
## L.R.5.2(b)

I hereby certify that on April 3, 2024, a copy of the foregoing document was served on the following persons by the following means:

1, 2    CM-EDF
\_\_\_\_    Hand Delivery
 3     Mail
\_\_\_\_    Overnight Delivery Service
\_\_\_\_    Fax
\_\_\_\_    E-Mail

1. CLERK, UNITED STATES DISTRICT COURT

2. ZENO B. BAUCUS
   RYAN G. WELDON
   Assistant United States Attorney
   United States Attorney's Office
   2602 2nd Avenue North, Suite 3200
   Billings, MT  59101
       Counsel for the United States of America

3. ADOLFO VARGAS LEPE
       Defendant

                                     /s/ Edward M. Werner
                                     EDWARD M. WERNER
                                     Federal Defenders of Montana
                                        Counsel for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief is in compliance with Local Rule 12.1(e). The Brief's line spacing is double spaced. The brief is proportionately spaced, the body of the argument has a Times New Roman typeface, 14-point size and contains 2,513 words, excluding tables and certificates.

DATED this 3rd day of April, 2024.

/s/ Edward M. Werner
EDWARD M. WERNER
Federal Defenders of Montana
Counsel for Defendant