IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ADOLFO VARGAS LEPE,<br><br>Defendant. | CR 23-79-BLG-SPW<br><br>ORDER |

Before the Court is Defendant Adolfo Vargas Lepe's Motion to Suppress. (Doc. 52). Lepe is charged with three counts of kidnapping in violation of 18 U.S.C. § 1201(a)(1), possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Doc. 44). The drug charges arise out of evidence found in the searches of Lepe's storage unit and backpack. (*See* Doc. 53 at 4).

Lepe moved to suppress the physical evidence obtained in both searches. (*Id.* at 2–4). The Government responded (Doc. 56), and Lepe replied (Doc. 58). A motion hearing was held on April 24, 2024, during which two witnesses, FBI Special Agents Luke Smith and Wyatt Graber, testified. The Court finds the material facts

are not disputed based on the parties' briefing, the officers' reports, and the officers' testimony.

The Court denies Lepe's motion for the reasons stated below.

I. **Background**

On May 29, 2023, Jane Doe reported to law enforcement that Lepe had taken her against her will from Lander, Wyoming, and transported her to Roberts, Montana, where he assaulted her at his residence. (Doc. 53 at 3). On May 31, 2023, a warrant was issued for Lepe's arrest. (Id.). Carbon County deputies observed Lepe driving near Toy Box Storage in Boyd, Montana. (Doc. 54 at 4). The deputies followed Lepe, eventually pursuing him at high speed. (Id.). At some point during the pursuit, Lepe threw a backpack out of the window of his truck. (See Doc. 56 at 6). Deputies were eventually able to arrest Lepe after they performed a PIT maneuver, causing Lepe's truck to spin and roll into a ditch. (Doc. 54 at 4).

That same day, a Carbon County deputy contacted the owner of Toy Box Storage, who confirmed that Lepe rented a storage unit. (Doc. 57-2 at 2). The owner agreed to allow the deputy to secure Lepe's storage unit pending a possible search warrant. (Id. at 2–3). Deputies secured Lepe's storage unit with a new lock and placed initialed and dated tape on the sliding door. (Id.).

While Lepe was incarcerated at Yellowstone County Detention Facility between June 2 and June 25, 2023, he made several phone calls. (Doc. 54 at 17–

19). Authorities suspected the calls were connected to drug trafficking. (*See id.* at 19). Several of the calls were in Spanish and required translation. (*Id.* at 17). Based on the translations of the coded conversations, agents believed that Lepe's storage unit contained drugs, that Lepe had thrown a backpack containing drugs out of the window of his car while law enforcement chased him, and that Lepe had attempted to have one or more people retrieve the backpack for him. (*See id.* at 20; Doc 56 at 6).

Agent Luke Smith testified that, after he learned the FBI was going to take the case, he actively worked on building the case against Lepe between May 31 and July 7, 2023. Law enforcement executed a search warrant on Lepe's residence the evening of May 31, 2023, which lasted into the morning of June 1, 2023. Officers found electronic media in the search of the residence, and Agent Smith obtained a search warrant for the contents of the media. He drafted the criminal complaint, then interviewed witnesses, collected police reports, and collected evidence. At least one child victim or witness was identified, so Agent Smith arranged for one or more interviews with a trained forensic interviewer. Additionally, he collected medical records, served subpoenas, and participated in a preliminary hearing that was held on June 16, 2023. In June, he attended a one-week training in Phoenix related to his duties as an Indian Country agent.

Agent Wyatt Garber testified that, on July 6, 2023, he interviewed the property manager of Toy Box Storage. Before or after the interview, he went to Lepe's padlocked storage unit and saw that it was sealed. The property manager of Toy Box Storage reported that Carbon County deputies had secured the storage unit on May 31. On July 7, federal law enforcement applied for a warrant to search Lepe's storage unit. (Doc. 54 at 13–35). The warrant was executed on July 10, 2023. (*Id.* at 36). Agents seized cocaine and methamphetamine. (Doc. 56 at 6).

That same day, law enforcement walked along the side of a portion of the road on which Lepe had driven during the May 31 pursuit. (*Id.* at 7). The agents found a backpack filled with 12.5 pounds of methamphetamine. (*Id.*).

On June 29, 2023, Lepe was charged with kidnapping in violation of 18 U.S.C. § 1201(a)(1). (Doc. 16). On August 23, 2023, the Government filed a superseding indictment, adding a charge for possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1). (Doc. 29). On January 18, 2024, the Government filed a second superseding indictment, adding two additional kidnapping charges. (Doc. 44).

Lepe argues that the continued seizure of his storage unit and the search of the backpack violate the Fourth Amendment and moves to exclude evidence found in the search of both.

## II. Discussion

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. The Supreme Court has repeatedly affirmed that "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (quoting *Riley v. California*, 573 U.S. 373, 381 (2014)). If law enforcement violates a defendant's Fourth Amendment right to be free from unreasonable searches and seizures, then, under the exclusionary rule, "all evidence seized as a result of the unconstitutional actions of law enforcement must be suppressed as the fruit of the poisonous tree." *United States v. Morales*, 252 F.3d 1070, 1073 (9th Cir. 2001) (citing *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963)).

### A.  *Seizure of the Storage Unit*

"A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (internal references and quotation marks omitted). A "seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests[,]" *id.* at 124, such as when there is an unreasonable delay between seizure and obtaining a search warrant, *see United States v. Sullivan*, 797 F.3d 623, 633 (9th

5

Cir. 2015). To determine whether a delay is reasonable, it must be viewed within the totality of the circumstances. *Id.*

Courts use the balancing test adopted by the Supreme Court in *United States v. Place* to determine if the delay between a seizure and the search is constitutional. *Id.* (citing 462 U.S. 696, 703 (1983)). "[T]he nature and quality of the intrusion on the individual's Fourth Amendment interests" is balanced "against the importance of the governmental interests alleged to justify the intrusion." *Place*, 462 U.S. at 703. Any one of several factors may be considered in the balancing test, including whether the defendant was in custody, *Sullivan*, 797 F.3d at 633; the parolee or probationary status of the defendant, *United States v. Johnson*, 875 F.3d 1265, 1276 (9th Cir. 2017); whether the initial seizure was pursuant to a warrant, *United States v. Jobe*, 933 F.3d 1074, 1079–80 (9th Cir. 2019), or was otherwise lawful, *United States v. Mulder*, 889 F.2d 239, 241 (9th Cir. 1989); whether the defendant consented to the search or seizure, *see Sullivan*, 797 F.3d at 634; and whether the lapse of time was the result of the Government's "dilatory tactics," *Johnson*, 875 F.3d at 1276. The Court also considers the length and reason for the delay between the seizure and the search. *See Place*, 462 U.S. at 709 ("[I]n assessing the effect of the length of the detention, we take into account whether the police diligently pursue[d] their investigation[.]").

Lepe argues that the 38-day delay between the time Carbon County deputies seized his storage unit and when Agent Smith applied for a search warrant is unreasonable. (Doc. 53 at 9). As the length of the seizure was unreasonable, the exclusionary rule applies, and the Court should suppress the evidence found in Lepe's storage unit. (*Id.*). Lepe acknowledges his incarceration may have impacted his ability to use his storage unit, but he argues that he did not surrender his property right simply by being incarcerated. (*Id.*).

In response, the Government argues that, under the totality of the circumstances, its delay in obtaining the warrant was reasonable. (Doc. 56 at 9). The Government first asserts that Lepe's property interest in his storage unit was diminished while he was in custody. (*Id.* at 12). It asserts that Lepe's property interest was not affected by the prolonged seizure because neither Lepe nor anyone else attempted to access his storage unit during the 38 days. (*Id.* at 10). The Government argues that it had significant interest in holding the property because Lepe was under investigation for interstate kidnapping, and law enforcement did not know whether evidence related to the kidnapping was being held in Lepe's storage unit. (*Id.* at 12). The Government further argues that law enforcement also suspected that the storage unit might contain narcotics. (*Id.*). Next, the Government argues that the Court should consider that police were diligently pursuing the investigation during the month, including obtaining and reviewing medical records

and electronic data, speaking to witnesses, learning of Lepe's alleged drug trafficking, and listening to and translating Lepe's jailhouse conversions. (*Id.* at 13–14). Finally, the Government argues that, if the prolonged seizure was improper, the good faith exception applies, and the evidence should not be excluded. (*Id.* at 14).

On reply, Lepe argues that the Government cannot seize his property for 38 days, then argue that because he did not try to physically access his seized property during that time, the Government's delay is reasonable. (Doc. 58 at 6). Further, Lepe argues that his failure to consent to the seizure is significant to whether the prolonged seizure was reasonable. (*Id.*). As to the Government's good faith exception, Lepe argues that his Fourth Amendment rights were violated by the 38-day seizure, not the search conducted pursuant to the warrant, so the good faith exception does not apply. (*Id.* at 8).

Neither party disputes the following: by padlocking and placing evidence tape on the door of Lepe's storage unit on May 31, 2023, officers seized the storage unit within the meaning of the Fourth Amendment; the initial seizure of the storage unit was constitutional; and the search of Lepe's storage unit pursuant to a search warrant on July 10, 2023, was constitutional. The question the Court must consider is whether the Government's 38-day seizure of Lepe's storage unit before applying for a search warrant violates the Fourth Amendment.

The Court first considers the extent of the intrusion on Lepe's possessory interests in the storage unit and its contents and concludes the intrusion was minimal. While Lepe did not consent to the seizure, neither party disputes the lawfulness of the initial seizure. Additionally, Lepe was incarcerated before officers sealed off the storage unit, continued to be incarcerated at the time the agents searched the storage unit, and remains incarcerated to this date. (*See* Docs. 5, 12, 18, 33, 45). Because he was incarcerated, Lepe's possessory interest in his storage unit and its contents was significantly reduced. *See Segura v. United States*, 468 U.S. 796, 813 (1984) (Burger, C.J.) (plurality opinion) (finding the interference with the possessory interests of detained defendants to be "virtually nonexistent").

The Government should not seize property and then, at its leisure, apply for the search warrant. However, as Agent Smith testified, he was actively working on investigating this case during the 38 days. Additionally, federal law enforcement applied for a search warrant within a day of when Agent Garber learned of the seized storage unit. *Cf. United States v. Uu*, 293 F. Supp. 3d 1209, 1214–15 (D. Haw. 2017) (finding a 20-day delay unreasonable, in part because, after learning that the property had been seized eight days previously, the detective in charge of the case waited another 12 days before applying for a search warrant).

The Court next considers the degree to which the seizure and retention of Lepe's storage unit and its contents was necessary for the promotion of important

governmental interests. *Place*, 462 U.S. at 703–04. It finds that, under the circumstances in this case, the Government had an interest in investigating and finding evidence of the kidnapping across state lines and abuse of a woman. Further, once the Government suspected that Lepe was involved in the distribution of illegal drugs, it had a significant interest in investigating and finding evidence of Lepe's role in drug distribution.

Given Lepe's incarceration, the Government's diligence in investigating the case during the 38-day delay, and the Government's interest in retaining and searching the storage unit for evidence of crimes, the Court finds the Government's conduct was reasonable under the totality of the circumstances.[1]

---

1. The Government also argues that the Court should consider that, under the terms of the agreement between Lepe and Toy Box Storage, the owner *could* have padlocked Lepe out of his unit after 30 days of nonpayment (on about June 12). (Doc. 56 at 10 (citing *United States v. Gilman*, 684 F.2d 616, 619–20 (9th Cir. 1982))). The Government reasons that because Toy Box could have locked Lepe out of the storage unit in June 2023, Lepe did not have a property interest after that day, or if he did, his property interest was significantly diminished. (*Id.* at 10–12). Lepe devotes much of his reply brief to addressing this contention. (*See* Doc. 58). However, the Court finds Lepe's nonpayment unpersuasive as a factor in the *Place* analysis. First, this case and the case the Government relies on, *Gilman*, are factually and legally distinguishable. *See* 684 F.2d 616. The question in *Gilman* was whether Gilman had abandoned his property. *Id.* at 619–20. The Government has not claimed that Lepe abandoned his storage unit. Additionally, the defendant in *Gilman* had been notified by the property owners that the property in his storage unit must be reclaimed or would be seized for nonpayment. *Id.* at 619. Lepe missed his June payment, likely because he was incarcerated, but his August 2023 payment indicates that Lepe did not intend to abandon his storage unit. (*See* Doc. 58-1 at 7). Additionally, as Lepe points out on reply, Toy Box Storage did not "strongly enforce[]" its policy of locking renters out after 30 days of nonpayment. (Doc. 58 at 3, 5). The Court will not use a seldom-enforced provision of Lepe's contract in its consideration of whether Lepe had a significantly diminished property interest.

10

Case 1:23-cr-00079-SPW Document 65 Filed 05/07/24 Page 11 of 15

Accordingly, the Court finds the 38-day seizure of Lepe's storage unit was reasonable, and the evidence in the storage unit will not be excluded.

B.   *Search of the Backpack*

For a Defendant to have standing to seek the suppression of the fruits of an agent's search, he must show that he personally had "a property interest protected by the Fourth Amendment that was interfered with . . . or a reasonable expectation of privacy that was invaded by the search." *United States v. Padilla*, 111 F.3d 685, 688 (9th Cir. 1997) (internal quotation omitted). "The reasonable expectation of privacy turns on (1) whether the person had 'an actual (subjective) expectation of privacy,' and (2) whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *United States v. Lopez-Cruz*, 730 F.3d 803, 807 (9th Cir. 2013) (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).

"Persons who voluntarily abandon property lack standing to complain of its search or seizure." *United States v. Fisher*, 56 F.4th 673, 686 (9th Cir. 2022) (quoting *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986)) (internal punctuation omitted). The test for abandonment is "whether the complaining party retains a reasonable expectation of privacy in the articles alleged to be abandoned." *United States v. Wilson*, 472 F.2d 901, 902 (9th Cir. 1972) (citing *Katz*, 389 U.S. at

351). "Abandonment is a factual determination that 'is a question of intent.'" *Fisher*, 56 F.4th at 686 (citing *Nordling*, 804 F.2d at 1469).

Lepe generally argues that the Government's search of his backpack violated the Fourth Amendment because the Government did not have a warrant to search the backpack, and the search did not occur under an exception to the search warrant requirement. (Doc. 53 at 10–13). He asserts that the abandonment doctrine does not apply because the agents who searched for and found the backpack believed that Lepe "had an intent to retain control over it." (*Id.* at 11). He argues that his is a "niche case," where he only "partially relinquish[ed] physical control" over the backpack. (*Id.* at 13).

In response, the Government asserts that this is not a "niche" case because "[t]hrowing items out of a moving vehicle to avoid detection by law enforcement is a classic form of abandonment." (Doc. 56 at 15–16). Because Lepe abandoned the backpack, no warrant is required to search the items. (*Id.* at 16). To Lepe's argument that he showed an intent to retain control, the Government responds that a defendant cannot reacquire possessory rights by "quickly placing a jail call and simply discussing the property." (*Id.* at 16–17). It further argues that Lepe's suggestion that sending another person to retrieve the backpack re-establishes standing under the Fourth Amendment is not in keeping with Fourth Amendment Jurisprudence. (*Id.*).

Lepe does not reply to the Government's abandonment arguments.

When presented with facts similar to those in this case—defendants throwing drugs out of a car window while being chased by police—the Ninth Circuit found that the party abandoned the items and that there was "neither search nor seizure" of the abandoned items. *United States v. McLaughlin*, 525 F.2d 517, 519–20 (9th Cir. 1975). Accordingly, the Court finds that Lepe abandoned his property when he threw it out the window of his truck.

The Court rejects Lepe's argument that he had an intent to retain control over the backpack, as evidenced by his attempts to have others retrieve the backpack for him, based on the Ninth Circuit's holding in *United States v. Fisher*, 56 F.4th 673 (9th Cir. 2022). In that case, the website Tumblr identified Fisher as uploading potential child pornography and informed law enforcement. *Id.* at 676. Law enforcement took several actions in 2016, including searching Fisher's house. *Id.* at 678. In 2017, and while he was detained, Fisher sold his house. *Id.* at 681. In 2018, while Fisher was still in custody, police heard conversations between him and his sibling/co-defendant, in which Fisher discussed in code the location of concealed inculpatory property at his former residence. *Id.* Fisher and his co-defendant attempted to enlist the help of a non-incarcerated sibling to search Fisher's former house and recover the property, but the sibling was unsuccessful. *Id.* In a subsequent

search of the house, law enforcement located a black cellphone and two portable SSD drives in the attic. *Id.*

The court found the items were abandoned and that the attempts to recover the items did "not compel" the court to disagree with the district court's conclusion that Fisher had abandoned the items. *Id.* at 687. The court reasoned that if "one who has abandoned property from all outward appearances in fact has retained a subjective expectation of privacy, then a search of the property is nevertheless valid if that expectation is intrinsically unreasonable or not otherwise entitled to protection." *Id.* (quoting *United States v. Sledge*, 650 F.2d 1075, 1080 (9th Cir. 1981)).

As in *Fisher*, Lepe abandoned his property and tried to use others to retrieve it. Lepe threw a backpack containing inculpatory evidence (methamphetamine and fentanyl) out of his truck during a car chase with police. In doing so, he did not take any "reasonable precautions to maintain [his] privacy interest" in the backpack. *See United States v. Perez*, 689 F.2d 1336, 1338 (9th Cir. 1982).

Lepe argues that his intention to regain the bag indicates a continued possessory interest in it, but his subjective expectation of privacy is insufficient; his expectation of privacy must also be objectively reasonable. It is objectively unreasonable to expect privacy in a backpack discarded along the roadside. It could be upset by animals, found by other persons, or thrown away as garbage by

volunteers cleaning the roadside. No person finding the backpack would assume that its owner had done anything except discard it, and the police were correct in treating the backpack as abandoned.

The fact that Lepe tried to solicit the help of others to retrieve his bag does not change the Court's reasoning. As in *Fisher*, Lepe's attempt to reacquire the backpack is insufficient to establish standing in this case. *See also Nordling*, 804 F.2d at 1469–70 (holding that, when a person physically relinquished control of his luggage and then later claimed that the luggage was his, he did not "reassert[] a privacy interest in the bag").

Accordingly, the Court denies Lepe's motion to suppress the backpack and its contents because he does not have standing.

### III. Conclusion

IT IS HEREBY ORDERED that Defendant Adolfo Vargas Lepe's Motion to Suppress (Doc. 52) is DENIED.

DATED this 6th day of May, 2024.

/s/ Susan P. Watters
SUSAN P. WATTERS
United States District Judge